STATE OF NORTH CAROLINA v. DANNY ALEXANDER WHITE

No. 599PA87

(Filed 28 July 1988)

**1. Searches and Seizures § 33— exceeding scope of a warrant—plain view rule**

The trial court in a prosecution for possession of stolen property did not err when it denied defendant's motion to suppress items which had not been specifically identified in a search warrant application and which were seized during a search of his home. Even though officers carried with them incident reports concerning stolen property not listed in the search warrant, there is no evidence in the record that prior to the search police officers had established a linkage between the items listed on the incident reports and defendant's activities that amounted to probable cause to believe that these items were hidden at defendant's home; and police suspicions do not invalidate a search that subsequently confirms those suspicions unless police withhold information to the effect that they have probable cause. Moreover, there is no evidence in the record that when police officers came upon the items listed in the incident reports during the course of their search, they violated the requirement that they have probable cause to believe that the items in plain view were the fruits of criminal conduct by virtue of mere observation without moving, disturbing or handling any item of the contested evidence.

**2. Searches and Seizures § 33; Receiving Stolen Goods § 4— exceeding scope of search warrant—items not listed on warrant—not admissible**

The trial court erred in a prosecution for possession of stolen property by admitting into evidence property which was not listed on a search warrant but which was seized during a search of defendant's house where the county police who seized the items could not establish that they were evidence of crime until they had consulted city police after the search and seizure had occurred.

**3. Receiving Stolen Goods § 7— sentencing—multiple counts—multiple punishments not unconstitutional**

The trial court did not err when sentencing defendant for six counts of felonious possession of stolen property and two counts of misdemeanor possession of stolen property by not arresting judgment as to all but one of the offenses because N.C.G.S. § 14-71.1 individuates crimes of possession by the time at which the stolen goods came into the criminal's possession rather than homogenizing all simultaneously possessed stolen items into one possessory offense.

**4. Receiving Stolen Goods § 5.1— possession of stolen property—evidence sufficient**

The trial court did not err in a prosecution for felonious possession of stolen property by denying defendant's motion at the close of all the evidence to dismiss the charges where the State presented evidence of property recovered from defendant's home and testimony of break-in victims identifying the stolen property taken from the residences; an accomplice testified that he

and defendant had together committed six to eight break-ins; and defendant admitted that he took the stolen property in pawn. N.C.G.S. § 14-71.1.

Justice FRYE dissenting in part.

Justice WEBB dissenting in part.

ON the State of North Carolina's petition for discretionary review of the decision of the Court of Appeals, 87 N.C. App. 311, 361 S.E. 2d 301 (1987), which found error in defendant's trial before *Ferrell, J.*, at the 15 September 1986 session of Superior Court, MECKLENBURG County, and granted defendant a new trial on seven of the charges on which he had been convicted and remanded the case for entry of a new judgment on the remaining conviction. Heard in the Supreme Court 11 May 1988.

*Lacy H. Thornburg, Attorney General, by John F. Maddrey, Assistant Attorney General, for the state, appellant.*

*Grant Smithson for defendant-appellee.*

MARTIN, Justice.

Defendant was convicted of six counts of felonious possession of stolen property and two counts of misdemeanor possession of stolen property. The state appeals from the decision of the Court of Appeals granting defendant a new trial on seven of the eight counts of possession of stolen property. For the reasons set forth below, we reverse the ruling of the Court of Appeals granting a new trial on four counts but uphold the granting of a new trial on the three remaining counts on which defendant was convicted.

The state's evidence tends to show: Officer Bailey of the Mecklenburg County Police Department testified that he and other officers were investigating a series of break-ins that had occurred in the vicinity of South Mecklenburg High School. On 4 January 1986, police officers discovered a station wagon in the parking lot at the high school containing property stolen from a neighborhood residence. The registered owner of the station wagon testified that he had sold the vehicle to defendant. An informant, Andre Mobley, who confessed to being an accomplice of defendant's in carrying out six to eight of the break-ins, provided the officers with information concerning the crimes. The informant gave the Mecklenburg County police detailed information

about several of the break-ins and some of the property stolen. He told police he had seen certain specific items of stolen property at defendant's 512 West Worthington Avenue home in Charlotte. On 15 January 1986, Officer Bailey obtained a warrant to search defendant's home, which he and four other officers executed on 16 January. The warrant application listed the items that Mobley had seen and, on the strength of his information, asserted that there was probable cause to search defendant's home for these items.

When police officers searched defendant's home, they recovered only one item, a JVC stereo, that was listed in the search warrant. When the police officers executed the search warrant, they took with them Mecklenburg County police incident reports listing property stolen in the South Mecklenburg High School neighborhood rash of break-ins in the preceding six-week period. In addition to the JVC stereo, police officers seized items listed on police incident reports as having been stolen in recent break-ins in the same neighborhood. They also seized items that were listed neither on the search warrant nor on county police incident reports. These last-mentioned items were stolen during break-ins that were under investigation by city police rather than county police. Convictions were obtained in the cases of the eight break-in victims who testified at defendant's trial. Each identified one or more items seized during the 16 January search of defendant's house as among the items stolen from their residences. These items included stereo equipment, a raccoon coat, jewelry, and costume jewelry. One victim-witness recovered all of his stolen possessions. They were discovered by police either in defendant's station wagon on the night of 4 January or during the course of the search of defendant's home. The other victim-witnesses each testified that only a fraction of the property stolen from them was recovered.

[1] Defendant first contends that the trial court committed prejudicial error when it denied his pretrial motion to suppress items which had not been specifically identified in the warrant application and were seized during the 16 January 1986 search of his home. Defendant argues that his fourth and fourteenth amendment rights under the Federal Constitution were violated by the seizure of the items not listed on the warrant application because no valid exception to the fourth amendment's warrant require-

ment, in particular the "plain view" exception, was applicable to his case. The state argues that because the items in question were inadvertently discovered while a lawful search was in progress, their seizure falls within the plain view exception to the warrant requirement of the United States Constitution and also satisfies the strictures of N.C.G.S. § 15A-253. Because defendant has made no allegation of violation of his rights under the North Carolina Constitution, we decide this issue under the Federal Constitution and applicable statutory law.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564 (1971), the United States Supreme Court set out three requirements which must be met in a lawful police seizure of evidence in plain view without a warrant. The *Coolidge* three-part test was applied in *State v. Williams*, 315 N.C. 310, 338 S.E. 2d 75 (1986). There Justice Meyer summarized the *Coolidge* requirements:

First, the initial intrusion which brings the evidence into plain view must be lawful. *Id.* [403 U.S.] at 465, 29 L.Ed. 2d at 582. Second, the discovery of the incriminating evidence must be inadvertent. *Id.* at 469, 29 L.Ed. 2d at 585. Third, it must be immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are otherwise subject to seizure. *Id.* at 466, 29 L.Ed. 2d at 583.

315 N.C. at 317, 338 S.E. 2d at 80.

In the case before us, the Court of Appeals concluded that while the seizure of the items not listed on the search warrant satisfied the first and third *Coolidge* requirements, the discovery was not inadvertent and the seizure of these items was thus illegal. The Court of Appeals reaches this result because it interprets "inadvertence" to mean "unanticipated" or "unexpected." We reject the analysis of "inadvertent discovery" employed by the Court of Appeals and, accordingly, reach a different result as to the admissibility of the contested evidence seized at defendant's home on 16 January 1986.

The *Coolidge* decision did not make explicit the meaning to be given to "inadvertence" in the test for the plain view exception to the warrant requirement. The *Coolidge* Court does, however, provide some general guidance through its discussion of the objectives of the warrant requirement of the fourth amendment:

> First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. . . . The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings.

403 U.S. at 467, 29 L.Ed. 2d at 583. Justice Stewart, writing for the plurality in *Coolidge*, argues that the plain view exception does not thwart these objectives. The initial intrusion is justified by a warrant while the second requirement bars police from launching a general exploratory search. *Id.* at 467, 29 L.Ed. 2d at 583-84.

In *United States v. Hare*, 589 F. 2d 1291 (1979), the Sixth Circuit Court of Appeals provides an analysis of the concept of inadvertent discovery which we find persuasive. That court concludes that "inadvertence," in the context of the plain view doctrine, "means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise justified search." *Id.* at 1294. The Sixth Circuit in effect proposes a two-step inquiry into the constitutional propriety of supposedly "plain view" seizures: (1) Prior to the search did the police have probable cause to secure a search warrant for the items subsequently seized—but not specifically listed in the warrant—at the location to be searched? If the answer is positive, the seizure is illegal and the fruits of it must be suppressed. If the answer is negative, the inquiry proceeds to the question, (2) did the police have probable cause to believe that the seized items were evidence of criminal conduct when the subsequent warrantless seizure actually took place? As to the second phase of the inquiry, the United States Supreme Court has recently confirmed the approach of the *Hare* court. In *Arizona v. Hicks*, 480 U.S. ---, 94 L.Ed. 2d 347 (1987), the Court ruled that in order to invoke the plain view doctrine, absent police operational necessities in efforts to detect certain types of crime, police must have probable cause to believe that items seized without a warrant are evidence of criminal conduct at the time of the seizure. *Id.* at ---, 94 L.Ed. 2d at 355. The *Hare* court explains its support for what we have called step one of an inadvertency analysis as follows:

There are many times when a police officer may "expect" to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery.

589 F. 2d at 1294. The Sixth Circuit reasons that when police come upon evidence they have no warrant to seize during a search legitimately targeted at other evidence, the seizure of that evidence is rendered exigent. To leave it is to risk its being spirited away by criminals or their confederates. The court distinguishes between exigencies of police officers' own making—where they have failed to include items they have probable cause to believe are at a location to be searched in their warrant application—from true exigencies giving rise to a legitimate exception to the warrant requirement. While the former cannot be tolerated, the latter imposes no significant diminution of fourth amendment privacy protections, for the alternative would be to secure the premises—a procedure which may in any event exceed police authority once the original warrant has been executed—while an officer is sent to obtain a new warrant, a process which would only delay the seizure. 589 F. 2d at 1294-95.

We now turn to the task of applying the *Hare* analysis to the case before us. We note that the record developed at the suppression hearing is sparse, giving a bare minimum of information about how the police conducted the search of defendant's home and the seizure of the contested evidence. The trial judge made conclusions of law following the suppression hearing that the contested evidence was competent to be offered and that its admission did not violate defendant's constitutional rights. The Court of Appeals disagreed, holding that "[t]he evidence clearly demonstrates that the officers' discovery of the items of stolen property listed in the incident reports was not inadvertent." 87 N.C. App. at 322, 361 S.E. 2d at 307. The Court of Appeals supports its conclusion as follows:

The officers believed that the stolen property listed on the incident reports would be discovered at defendant's residence. They had more than a mere suspicion that discovery would occur. The officers carried the incident reports with them for the specific purpose of searching for and seizing items found in defendant's residence that comported with items listed in the reports.

*Id.* at 322, 361 S.E. 2d at 307. The Court of Appeals erred in treating police suspicions or beliefs as to what they might find at defendant's home as evidence that they launched a search for the items on the incident reports that took them outside the boundaries of the duly warranted search they were permitted to undertake. Nor is the fact, testified to by Officer Bailey, that the purpose of taking the incident reports to defendant's home was to make it possible to compare the property listed on the reports "with property that may have been found in the residence" evidence of police misconduct. There is no evidence in the record that prior to the search police officers had established a linkage between the items listed on the incident reports and defendant's activities that amounted to probable cause to believe that these items were hidden at defendant's home. We are in agreement with the *Hare* court that unless police withhold information to the effect that they have probable cause, either to circumvent the warrant requirement altogether or to give themselves illicit scope to conduct an exploratory search, police suspicions do not invalidate a search that subsequently confirms those suspicions.

As to the second stage of our analysis, there is no evidence in the record that when the officers came upon the items listed in the incident reports during the course of their search they violated the requirement set forth in *Hicks*, 480 U.S. ---, 94 L.Ed. 2d 347, for a plain view seizure. *Hicks* requires that police officers must have probable cause to believe that the items in plain view were the fruits of criminal conduct by virtue of mere observation of the area in which the legitimate search is taking place. Thus, police "came a cropper" in *Hicks* because a police officer moved stereo equipment in order to read and record the serial numbers on it. Justice Scalia, writing for the Supreme Court, explains that the distinction between merely looking at the equipment and moving it a few inches in order to inspect the serial numbers is the difference between satisfying and violating the plain view

doctrine under the fourth amendment. Justice Scalia reasons that because mere inspection does not subject the target of the search to any additional invasion of privacy beyond that forfeited in the course of the legitimate search, such inspection, without a further invasion, gives rise to no fourth amendment violation. *Id.* at ---, 94 L.Ed. 2d at 353-54. In the case before us, the very fact that the police came armed with the incident reports apparently allowed them to ascertain from mere inspection of the items listed on those reports that they were indeed stolen property, without, as far as the record reveals, moving, disturbing, or handling any item of the contested evidence.

Our result with respect to the items listed on the incident reports comports with *State v. Williams*, 315 N.C. 310, 338 S.E. 2d 75 (1986), and *State v. Richards*, 294 N.C. 474, 242 S.E. 2d 844 (1978), in which we held that to qualify as inadvertent a putatively plain view seizure must not be marred by police intent to search for and seize items not described in the warrant. Mere suspicion that the property might be at the place to be searched is not enough to preclude the application of the "plain view" doctrine. *Williams*, 315 N.C. 310, 338 S.E. 2d 75. There is no evidence in the record that the police officers intended to search beyond the limits imposed by the warrant. They seized evidence which mere inspection, inspired by suspicions harbored as a result of good police work, revealed to be evidence of crime. We note that in light of the *Hicks* decision, holding that at the time of seizure the police must have probable cause to believe that the items in plain view were the fruits of criminal conduct, there is an overlap between the *Coolidge* requirement that it be immediately apparent to police that the seized items are evidence of crime and the requirement that discovery be inadvertent: Both are satisfied if the police have probable cause to believe that what they have come upon is evidence of criminal conduct.

We therefore reverse the decision of the Court of Appeals with respect to cases 86CRS4863, 86CRS4888, 86CRS4902, and 86CRS4924.

[2] We turn now to the three counts of felony possession of stolen property which rest on evidence seized during the 16 January search which was neither described in the warrant nor listed on the incident reports. These were items stolen from

witnesses Hoagland, Grain, and Sawyer. The break-ins were under investigation by city police rather than Mecklenburg County police and thus the items were not listed on county police reports. Mecklenburg County police were not able to establish that this group of seized items was evidence of crime until they consulted city police after the search and seizure had occurred. It is evident that the officers who conducted the search did not have probable cause to believe that the items in this group were stolen property at the time that the seizures were consummated. *Hare*, 589 F. 2d 1291. We therefore hold that it was error to admit as evidence the property seized with respect to these three charges. The decision of the Court of Appeals granting defendant a new trial in cases 86CRS53468, 86CRS53472, and 86CRS53473 is affirmed.

[3] Defendant next contends that the trial court committed reversible error by not arresting judgment as to all but one of the offenses of which he was found guilty. Defendant argues that he was thereby unconstitutionally subjected to multiple punishments for the same crime. We find no merit in defendant's contention, which was likewise rejected by the Court of Appeals. At issue here is how defendant's criminal conduct is to be parsed. In *State v. Davis*, 302 N.C. 370, 275 S.E. 2d 491 (1981), in which we construed N.C.G.S. § 14-71.1, we implicitly rejected defendant's theory that the separate counts of possession of which he was convicted sprung from but one criminal offense. In *Davis* we explained that "possession . . . is a continuing offense beginning at the time of receipt and continuing until divestment." 302 N.C. at 374, 275 S.E. 2d at 494. Each separate count of which defendant was convicted grew out of a possession begun at different times of receipt following break-ins over a six-week period. N.C.G.S. § 14-71.1 therefore does not take the wholesale approach to possession envisioned by defendant. The statute individuates crimes of possession by the time at which the stolen goods came into the criminal's possession rather than homogenizing all simultaneously possessed stolen items into one possessory offense. Having found no merit in defendant's theory that he committed at most one offense of possession, we reject defendant's additional contention that he had ineffective assistance of counsel because his trial lawyer failed to move for arrest of judgment on the single offense theory.

[4]   Defendant's final contention is that the trial court committed prejudicial error when it denied his motion at the close of all the evidence to dismiss all the felonious possession of stolen property charges against him. It is beyond cavil that when a defendant brings a motion to dismiss in a criminal case, the trial judge must consider all the evidence in the light most favorable to the state, giving the state the benefit of every reasonable inference that the evidence permits. *State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984). There was sufficient evidence presented in defendant's case to establish his guilt. The state presented the evidence of the property recovered from defendant's home and the testimony of the break-in victims identifying the stolen property taken from their residences. Andre Mobley testified that he and defendant had together committed six to eight of the South Mecklenburg High School area break-ins. Defendant admitted that he took the stolen property in pawn. The evidence shows that defendant knew or had reasonable grounds to believe that the stolen property was stolen. N.C.G.S. § 14-71.1 (1986). We find no merit in this assignment of error.

The decision of the Court of Appeals finding no error in the trial of case 86CRS4916 is affirmed. However, the Court of Appeals vacated the judgment and remanded this case for the entry of another judgment. In the light of this Court's opinion, that portion of the decision of the Court of Appeals is vacated.

The result is:

       86CRS4863—Reversed.

       86CRS4888—Reversed.

       86CRS4902—Reversed.

       86CRS4924—Reversed.

       86CRS53468—Affirmed.

       86CRS53472—Affirmed.

       86CRS53473—Affirmed.

       86CRS4916—Modified and affirmed.

Justice FRYE dissenting in part.

On 16 January 1986, four Mecklenburg County police officers, armed with a search warrant, pried open the door of 512 West Worthington Street and seized property suspected of being the fruits of crime. Though the warrant possessed by these officers listed only a stereo, watch, and two pistols as the items to be seized, the officers in fact seized some fifty-five items. The only item found that was actually listed in the application for the search warrant was a JVC stereo.

The Court today endorses the actions of these officers by holding that the items not specifically identified in the warrant application were *inadvertently* discovered while the officers engaged in a lawful search. The majority, therefore, concludes that the seizure falls within the "plain view" exception to the warrant requirement of the United States Constitution, and satisfies the requirements of N.C.G.S. § 15A-253. Because this holding is a drastic departure from our cases interpreting the plain view exception to warrantless searches, I dissent from this portion of the majority's opinion.

The United States Supreme Court, in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564 (1971), held that the police may seize without a warrant the instrumentalities, fruits, or other evidence of crime which is in plain view if three requirements are met. To remain within the strictures of the constitution, the warrantless seizure requires: (1) that the *initial intrusion be lawful*; (2) the discovery of the incriminating evidence be inadvertent; and last, (3) it be immediately apparent that the items observed constitute evidence of a crime. *Id.* at 466, 29 L.Ed. 2d at 583. The State falls woefully short in satisfying the second prong.

In its opinion in *Coolidge*, the United States Supreme Court gave little guidance as to what was meant by "inadvertent" discovery. In *State v. Richards*, 294 N.C. 474, 242 S.E. 2d 844 (1978), this Court interpreted the inadvertent requirement of the plain view doctrine to mean "that there must be no intent on the part of investigators to search for and seize the contested items not named in the warrant." *Id.* at 489-90, 242 S.E. 2d at 854. Quite recently, this interpretation was restated in *State v. Williams*, 315 N.C. 310, 338 S.E. 2d 75 (1986). In applying this now well-established standard, it is eminently evident that the seizure of

those items listed in the police reports and not listed in the application for the search warrant was not inadvertent as that requirement has been interpreted by this Court.

After securing the search warrant from a magistrate, Officer Bailey testified that he and several other officers drove to the home of defendant to execute the warrant. Officer Bailey took with him fifteen police incident reports which contained information concerning break-ins covering a period of almost two months. In fact, Officer Bailey stated:

> When we went to the residence to execute the warrant, I took with me a series of Mecklenburg County Police Reports that had occurred in the vicinity of South Mecklenburg High School over a six-week to eight-week period prior to the execution of the search. *And the purpose of that was because of the property listed on those Police Reports to be compared with property that may have been found in the residence.* (Emphasis added.)

Moreover, Officer McMurray, who assisted in executing the warrant, stated at trial that he studied these reports before leaving for defendant's home.

After arriving at the home of defendant and finding no one present, the officers forced their way in. The State's testimony revealed that the officers, almost immediately, discovered the stereo that was listed on the application to the search warrant. The officers found nothing else which comported with the items listed in the warrant application. The officers, however, did discover other items which, when checked against the fifteen reports that they had taken along, were thought to be fruits of crime. The officers confiscated these items along with the stereo and other items not listed in the reports.

The officers confiscated a total of fifty-five items including such seemingly innocuous evidence as screwdrivers and blank VCR tapes. Not only did the officers seize these items that were not named in the warrant, they also seized a copy of defendant's lease and a copy of a traffic citation. Apparently, these items were seized to support the State's contention that this residence was in fact that of the defendant. Officer Bailey stated at trial that some of the confiscated items still remained at police head-

quarters, unclaimed by their owners. In fact, it was revealed at trial that some of the property seized was the personal property of defendant and his wife. In my opinion, this wholesale rummaging through the defendant's home was never contemplated as being an exception to the fourth amendment's admonition against unreasonable search and seizures. Nor, until today, could such a search survive the scrutiny given this type of evidence by this Court.

The majority states that its result comports with *State v. Williams*, 315 N.C. 310, 338 S.E. 2d 75, and *State v. Richards*, 294 N.C. 474, 242 S.E. 2d 844. It simply does not. Those cases stand firmly for the proposition that, for a discovery to be inadvertent, there must be *no intent* on the part of the investigators to search for and seize contested items not named in the warrant. The Court's departure from this established and prudent principle goes unexplained.

Through the State's own witnesses, it was revealed that the only reason the officers took with them the incident reports of other crimes was to compare the items listed in the reports with what was to be found in defendant's home. It was the intention of the officers to go to defendant's home not only to search for items enumerated in the search warrant but also to search for other items of contraband. This is supported not only by the taking of the reports to the search but also by the careful study of the reports by the officers prior to departing for defendant's home. It thus becomes exceedingly evident that the reports were taken for no other reason than to search for and confiscate items listed therein. It follows then that the discovery of these items was not inadvertent but intentional.

The holding of the Court does little to discourage law enforcement officers from securing a warrant to search for one item, and then embarking on "exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. at 467, 29 L.Ed. 2d at 583, in one last effort to find fruits of crime. The inadvertent requirement of the plain view doctrine, as followed before by this Court, was an effort to thwart these attempts by law enforcement officers to cloak general exploratory searches under the veil of plain view. The majority succeeds in dismantling this effort.

I, therefore, respectfully dissent from that portion of the Court's opinion which holds that the discovery of items not mentioned in the application for the search warrant was inadvertent and allows the seized items into evidence under the plain view doctrine. I would affirm the unanimous decision of the Court of Appeals on this issue.

Justice WEBB dissenting in part.

I dissent from that portion of the majority opinion which affirms the judgment of the Court of Appeals ordering new trials for the convictions resting on the evidence seized which was neither described in the warrant nor listed on the incident reports. The majority says, "[i]t is evident that the officers who conducted the search did not have probable cause to believe that the items in this group were stolen property at the time the seizures were consummated." When these items were found with other items which the officers had cause to believe were stolen it seems to me the most logical inference to be drawn is that these items were probably also stolen. It is obvious the officers thought the items were probably stolen or they would not have seized them. I believe the officers were reasonable in this belief. I believe there was probable cause to believe these were stolen items and the officers properly seized them.

I concur in the rest of the majority opinion.