STATE OF NORTH CAROLINA v. SCOTTIE LEE GRAVES

No. COA98-1285

(Filed 5 October 1999)

**1. Search and Seizure— warrantless search—unconstitutional**

Crack cocaine and a crack pipe should have been excluded from a prosecution for possession of cocaine and paraphernalia, resisting an officer, and being an habitual felon where an officer interviewed defendant in an emergency room after defendant had

STATE v. GRAVES

[135 N.C. App. 216 (1999)]

been shot; a nurse began to remove defendant's clothing while the officer was speaking to defendant; wads of brown paper fell out of defendant's shoe or pant leg onto the gurney; and the officer picked up the wads of paper and unraveled them, finding the crack and the pipe. The record is bereft of any evidence that the officer recognized or even suspected that the brown paper wads contained contraband before he picked them up and unraveled them; while the wads of paper were suspicious and an officer of this experience would likely recognize such wads as containing contraband, the State cannot substitute speculation for evidence.

**2. Confessions and Other Incriminating Statements— fruit of poisonous tree—applicable portions of statement unclear**

In a narcotics prosecution which involved an illegal search, only that portion of the information obtained after an unlawful search need be excluded as being the result of that search.

Appeal by defendant from judgment entered 26 March 1998 by Judge W. Erwin Spainhour in Guilford County Superior Court. Heard in the Court of Appeals 25 August 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General William P. Hart, and Agency Legal Specialist Kathy Jean Moore, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Constance Everhart Widenhouse, for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from a judgment imposing an active sentence entered upon his pleas of guilty to one count of felonious possession of cocaine, one count of misdemeanor possession of drug paraphernalia, one count of resisting a public officer, and to being an habitual felon. Prior to pleading guilty, defendant moved to suppress evidence seized from his person as well as his statement made subsequent to the seizure.

Evidence presented at the suppression hearing may be summarized as follows: On 7 October 1997, Officer K.A. Davis of the Greensboro Police Department went to the emergency room of Moses Cone Hospital to visit defendant, who had been shot earlier that evening in an area of Greensboro known for drug activity. The pur-

STATE v. GRAVES

[135 N.C. App. 216 (1999)]

pose of Officer Davis' visit was to ascertain defendant's condition and to gather any information defendant may have had about the shooting. While Officer Davis was speaking to defendant, a nurse began to remove defendant's shoes and clothing; as she did so, Officer Davis noticed some wads of brown paper fall out of defendant's shoe or pant leg onto the gurney. Without telling defendant the wads of paper had fallen from his clothing, Officer Davis proceeded to pick up the paper wads and unravel them. In the first paper, Officer Davis found a crack pipe made of burned glass tubing and a brass screen. In another piece of paper, Officer Davis found crack cocaine.

After searching the paper wads and seizing the contents, Officer Davis continued to interview defendant, who was not under arrest. During the interview, defendant told Officer Davis that earlier in the evening he had been a passenger in a car in which a drug deal between two other people had gone bad. Defendant did not admit to buying drugs. Near the end of the interview, Officer Davis advised defendant that he had found the drugs and drug paraphernalia contained in the brown paper; defendant did not admit to possessing the contraband. Officer Davis then left the hospital and obtained a warrant for defendant's arrest; defendant was arrested the next morning upon his release from the hospital.

The trial court found the facts as summarized above and concluded that Officer Davis' seizure of the cocaine and drug paraphernalia did not violate defendant's rights under the United States or North Carolina Constitutions as the items were lawfully seized under the plain view doctrine. The trial court also concluded that defendant's statements to Officer Davis were voluntarily made. Defendant appeals the denial of his motion to suppress.

[1] Defendant first argues that the crack cocaine and drug paraphernalia seized by Officer Davis at the hospital should have been suppressed because Officer Davis' warrantless seizure and search of the wads of brown paper belonging to defendant was unconstitutional. Due to the paucity of the evidence presented by the State at the suppression hearing, we must agree.

The Fourth Amendment to the United States Constitution and Article I of the Constitution of the State of North Carolina protect individuals against unreasonable searches and seizures. U.S. Const. Amend. IV, N.C. Const. Art. I, § 20. A warrant obtained with judicial approval is the traditional protection against unlawful government

intrusions. A warrantless search unaccompanied by such judicial approval is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement. *In re Whitley*, 122 N.C. App. 290, 468 S.E.2d 610 (1996). The State bears a heavy burden to demonstrate how the warrantless intrusion was exempted from the warrant requirement. *Arkansas v. Sanders*, 442 U.S. 753, 61 L.Ed.2d 235 (1979); *United States v. Jeffers*, 342 U.S. 48, 96 L.Ed. 59 (1951).

One exception to the warrant requirement is the plain view doctrine, under which police may seize contraband or evidence if (1) the officer was in a place where he had a right to be when the evidence was discovered; (2) the evidence was discovered inadvertently; and (3) it was immediately apparent to the police that the items observed were evidence of a crime or contraband. *State v. Mickey*, 347 N.C. 508, 495 S.E.2d 669, *cert. denied*, 525 U.S. 853, 142 L.Ed.2d 106 (1998). The burden is upon the State to establish all three prongs of the plain view doctrine.

In this case, the first prong of this plain view test is clearly met, as Officer Davis was rightfully in the emergency room trying to gather evidence concerning the shooting of defendant. The second prong of the test is also satisfied, as Officer Davis' initial observation of the wadded pieces of brown paper was inadvertent, since they fell from defendant's clothing when the nurse was undressing him. The State, however, has failed to establish that it was immediately apparent to the police officer that the items observed were evidence of a crime or contraband.

The term "immediately apparent" in a plain view analysis is satisfied only " 'if the police have probable cause to believe that what they have come upon is evidence of criminal conduct.' " *State v. Wilson*, 112 N.C. App. 777, 782, 437 S.E.2d. 387, 389-90 (1993) (quoting *State v. White*, 322 N.C. 770, 777, 370 S.E.2d 390, 395 (1988)). "Probable cause exists where the 'facts and circumstances within their [the officers'] knowledge . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (quoting *Brinegar v. U.S.*, 338 U.S. 160, 175, 93 L.Ed. 1879, 1890 (1949)). "The circumstances leading to [a] seizure 'should be viewed as a whole through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *State v. Hendrickson*, 124 N.C. App. 150, 155, 476 S.E.2d 389, 392 (1996) (quoting *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979)). In sum, the State must establish that, given the facts and

STATE v. GRAVES

[135 N.C. App. 216 (1999)]

circumstances of the case, and viewed through the eyes of a policeman with the experience and training of Officer Davis, the nature of the contents of the brown paper wads was immediately apparent.

The record is bereft of any evidence that Officer Davis recognized or even suspected that the brown paper wads contained contraband before he picked them up and before he unraveled them. Officer Davis testified that when the wads of paper fell onto the gurney, he "saw something that was a little black, and just began to unravel it and came up with the tube." He recognized drug paraphernalia only after he unraveled the wads. When asked how he obtained the crack cocaine, Davis testified that he found it in "[t]he papers that were on the gurney, I began to unravel them and I discovered it then." At no time was Officer Davis asked, nor did he testify, as to what he suspected was contained in the paper wads before he unwrapped them.

The State argues that the facts and circumstances of the case, combined with the experience of Officer Davis, made the nature of the contents of the brown wads immediately apparent to Officer Davis. Officer Davis testified that he had worked for the Greensboro Police Department for almost 8 years at the time of the arrest, that he had received a narcotics training course, that he has observed crack cocaine on at least 50 occasions, and that he has arrested more than twenty individuals for possession of crack cocaine. Officer Davis had worked in the neighborhood where defendant was shot for over seven years, and described it as an area of high narcotics activity.

The State contends that "[a]lthough Officer Davis did not explicitly testify that he immediately knew what the items were, it is arguable that as he grasped the items, the identity of at least one item was immediately apparent by touch." While we agree with the State that the brown wads were suspicious, and also agree that a man of Officer Davis' experience would likely recognize such wads as containing contraband, the State cannot substitute speculation for evidence. Without testimony regarding the immediately apparent nature of the contraband, the evidence obtained from this search cannot be used at defendant's trial. We reached a similar result in *State v. Sanders*, 112 N.C. App. 477, 483, 435 S.E.2d 842, 846 (1993), when we held that where the officer who conducted a warrantless search "was never asked and did not testify about whether it was immediately apparent to him that the item he felt was contraband," the evidence obtained could not be used against the defendant at trial.

Although it may seem counterintuitive that a police officer is prohibited from picking up suspicious looking items inadvertently discovered in the course of lawful police activity, we are compelled to reach this result. The only check on warrantless intrusions is judicial review obtained in a suppression hearing. In such a hearing, the testimony of the police officer who conducted the search or seizure is often the sole evidence presented; it is against this evidence alone that the court must measure the reasonableness of the intrusion. As the State failed to elicit any testimony whatsoever about whether it was immediately apparent to Officer Davis that the brown paper wads contained contraband, the evidence obtained from this search may not be used at trial against defendant.

[2] Defendant also contends the statements he made to Officer Davis at the hospital were the "fruit" of an unconstitutional search and seizure and should have been suppressed. Under the "fruit of the poisonous tree" doctrine, evidence must be suppressed if it was obtained as the result of illegal police conduct or was the "fruit" of that unlawful conduct. *State v. Guevara*, 349 N.C. 243, 249, 506 S.E.2d 711, 716 (1998), *cert. denied*, 526 U.S. 1133, 143 L.Ed.2d 1013 (1999). Any incriminating statements obtained as a result of the illegal search must be suppressed. It is unclear in this case, however, which portions of the statements were obtained as a result of the illegal search. Officer Davis obtained much of this statement simply by questioning defendant. He did not tell defendant he had discovered the pipe and cocaine until near the end of the interview. Therefore, only that information obtained after the unlawful search can be said to have been discovered as a result thereof, and only this portion of defendant's statement need be excluded from evidence.

For the foregoing reasons, we must grant defendant a new trial at which the evidence obtained as a result of the illegal search shall not be admissible.

New trial.

Judges LEWIS and HUNTER concur.