An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-154

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

    v.

KYLE WESLEY WOOD

Durham County
No. 12 CRS 59532

Appeal by defendant from judgment entered 26 August 2013 by Judge Paul C. Ridgeway in Durham County Superior Court. Heard in the Court of Appeals 3 June 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*
>
> *Russell J. Hollers III for defendant.*

HUNTER, Robert C., Judge.

Defendant appeals the judgment sentencing him to twenty-four months of supervised probation which was entered after he pled guilty to one count of manufacturing marijuana and one count of possessing with intent to manufacture, sell, or deliver marijuana. On appeal, defendant argues that the trial court erred in denying his motion to suppress because the officers' initial warrantless entry into defendant's house and decision to

remain in the house was not justified by exigent circumstances. Thus, the marijuana seized as a result of the unconstitutional entry and search of defendant's house should have been suppressed.

After careful review, we affirm the trial court's denial of defendant's motion to suppress.

## Background

The State's evidence presented at the hearing on defendant's motion to suppress tended to establish the following: At approximately 5:00 a.m. on 21 September 2012, a man called 911 and claimed that he was taking pills and wanted to commit suicide ("the 911 caller"). The man's speech was very slurred and slow, and emergency dispatch had a hard time hearing him. Although the 911 call had come from 1330 Valley Run Drive in Durham, the dispatcher misunderstood and dispatched the officers to 1313 Valley Run Drive, defendant's address. Officer Jeffrey Kenyon ("Officer Kenyon") and Officer Terrence Austin ("Officer Austin") responded to the call. At the hearing, Officer Kenyon testified that he had been a police officer for four and a half years and was also a member of the crisis intervention team ("the CIT"). Members of the CIT are specially trained to deal with and respond to people in crises, including

those resulting from drug addiction, depression, and suicide. Officer Kenyon testified that he had responded to "quite a few suicide attempts" and that many of the callers are deceptive and deny that they are trying to commit suicide.

After arriving at defendant's house, Officer Kenyon testified that the whole house was dark and no one answered when he knocked on the door for 30 to 45 seconds. He and Officer Austin looked in the windows with their flashlights to see if they saw anyone in the house. They came to a bedroom where they could see a white male lying on a mattress who was later identified as defendant. Officer Kenyon knocked on the window and woke him up. When defendant answered the door, Officer Kenyon told him that police were responding to a suicide threat and that someone had called from his house reporting that he was taking pills and wanted to end his life. Defendant told Officer Kenyon that he was not the caller. Officer Kenyon asked if there was anyone else in the home; defendant replied that he had a roommate that stayed in the front bedroom. Officer Kenyon asked to speak to the roommate; defendant said he would not allow police into his house. Concerned that defendant's roommate was in danger, Officer Kenyon entered defendant's house and saw a man in the hallway. After Officer Kenyon told the

roommate why he was there, the roommate told him that he was not the 911 caller. The officers performed a safety sweep of the rooms with their flashlights, and, not finding anyone, met with defendant and his roommate in a front room.

Based on his past experiences with individuals attempting to commit suicide, Officer Kenyon contacted his communications officer and requested that he call back the number to see if a phone rang in defendant's house. While they were waiting to hear back from communications, another officer switched on the overhead lights for officer safety; up until this point, the officers were using only their flashlights to illuminate defendant's house. As Officer Kenyon learned from communications that dispatch had sent him to the wrong address, Officer Austin saw a large black bag with marijuana "falling out" of it in the middle of the floor next to a fireplace. Officer Austin testified that the bag was about two feet from where he was standing in the front room. At that point, to ensure that there was no one else in the house and concerned for officer safety based on the fact that there was a large amount of marijuana in the house, Officer Kenyon walked down the hallway and looked in a bedroom with its door open. He saw clotheslines with marijuana hanging from them through the open

door. After confirming there was no one else in the home, he and the other officers held defendant and his roommate in the front room while other officers secured a search warrant.

On 18 February 2013, defendant was indicted for manufacturing marijuana, possession with intent to sell or deliver marijuana, felonious possession of marijuana, maintaining a dwelling for the purpose of keeping or selling marijuana, and possession of drug paraphernalia. After the trial court denied his motion to suppress, defendant pled guilty to one count of manufacturing marijuana and one count of possessing with intent to sell or deliver marijuana, reserving the right to appeal the denial of his motion to suppress. The trial court sentenced defendant to a minimum term of five months to a maximum term of fifteen months imprisonment but suspended the sentence and placed defendant on twenty-four months of supervised probation. Defendant appeals.

**Argument**

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Specifically, defendant contends that the officers' entry into defendant's home without a warrant or defendant's consent was unreasonable because they did not have an objectively reasonable belief that

anyone inside the home was injured or needed immediate aid. Furthermore, even if the initial entry was reasonable, defendant contends that it was unreasonable for officers to remain in his home once they determined that neither defendant nor his roommate were the 911 caller. Accordingly, any evidence in plain view they saw was not within the reasonable scope of rendering emergency assistance and should have been suppressed.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, searches and seizures conducted without judicial authorization are per se unreasonable unless they fall within a well-established exception to the warrant requirement. *State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999).

One exception to the warrant requirement is when officers have an objectively reasonable basis for believing that someone has been injured and may need assistance or that further violence is imminent. *See State v. China*, 150 N.C. App. 469, 479, 564 S.E.2d 64, 71 (2002) ("Officers may enter a house for emergency purposes without a warrant when they believe a person in the house is in need of immediate aid or assistance in order to avoid serious injury."). This Court has noted that "[a] law enforcement officer's action is reasonable and therefore constitutional as long as the circumstances objectively justify the officer's behavior." *State v. Cline*, 205 N.C. App. 676, 679, 696 S.E.2d 554, 557 (2010).

Whether exigent circumstances exist to allow a warrantless entry into someone's home is determined on a case-by-case basis. *Id*. at 680, 696 S.E.2d at 558. For example, in *Cline*, *id*. at 682, 696 S.E.2d at 555, this Court held that exigent circumstances existed for an officer to make an immediate warrantless entry into the defendant's home based on the fact that there was an unattended child on the side of a highway, the officer believed that the defendant was the child's father, no one answered the officer's repeated knocks at the door, the home's back door was open, and a search warrant would have taken

over two hours to obtain. Similarly, in *State v. Scott*, 343 N.C. 313, 329, 471 S.E.2d 605, 614 (1996), our Supreme Court held an officer's warrantless search of a crawlspace under the defendant's house was not unreasonable because the officer was at the defendant's home to investigate a missing persons report, the officer observed green flies which may indicate a decaying corpse, and no one answered the officer's repeated knocks at the door.

The first issue is whether the officers' initial warrantless entry into defendant's house was justified. Here, Officer Kenyon, who had been a police officer for over four years and a member of the CIT who had responded to numerous suicide calls, was dispatched to defendant's home after the dispatcher told him that someone was attempting to commit suicide at defendant's address. Although the dispatcher misunderstood the caller's address, at the time Officer Kenyon responded, he had no way of knowing the dispatcher's mistake. Once he arrived at the home and spoke to defendant, based on his experience, he was concerned that someone else other than defendant may be in need of emergency assistance. In fact, defendant admitted to Officer Kenyon that he had a roommate but refused to allow him in the house to check on the roommate. In

an effort to ensure that no one else in defendant's house was attempting to commit suicide, Officer Kenyon entered the home to speak with defendant's roommate and anyone else he found in the house. A reasonable officer in Officer Kenyon's position could have believed that the 911 caller was still in the house and in need of emergency assistance. Furthermore, given that the caller claimed to have already taken pills in his effort, Officer Kenyon needed to immediately enter defendant's house because waiting for a search warrant would have taken too long under the circumstances. Accordingly, Officer Kenyon was authorized to make the initial warrantless entry into defendant's house.

Next, the Court must determine whether the officers' action of remaining in defendant's house after talking with defendant and his roommate was within the reasonable scope of rendering emergency assistance. *See State v. Woods*, 136 N.C. App. 386, 392, 524 S.E.2d 363, 367 (2000) (noting that even though an entry into a house may be justified, the Court must look at whether the scope of the ensuing searches was reasonable under the circumstances by determining whether it furthers the stated purpose for entering). Although officers spoke to defendant and his roommate and both denied being the 911 caller and claimed

that there was no one else in the house, Officer Kenyon remained concerned, given his past experience with responding to suicide attempts, that there was someone else in the house and that the 911 caller did not want to identify himself. To check, Officer Kenyon and the other officers remained in defendant's house to have dispatch call back the 911 caller's number and listen for a phone. At this point, Officer Kenyon still reasonably believed that the 911 call came from defendant's house. Furthermore, his solution to ensure the safety of the caller was justified and as unobtrusive as possible under the circumstances. Consequently, turning on the lights and remaining in the front room waiting for dispatch to call back the 911 caller's number was reasonable and still within the scope of rendering emergency assistance.

Finally, the last issue is whether the officer's seizure of the marijuana in the black bag was constitutional under the plain view doctrine. Under the plain view doctrine, police may seize evidence without a warrant if "(1) the officer was in a place where he had a right to be when the evidence was discovered; (2) the evidence was discovered inadvertently; and (3) it was immediately apparent to the police that the items observed were evidence of a crime or contraband." *State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999).

While waiting for the dispatcher's call and after turning on the light, Officer Austin saw a black bag with marijuana visibly falling out of it in plain view, approximately two feet away from where he was standing. Based on the emergency exigent circumstances, the officers were authorized to enter defendant's house and remain in defendant's home. When they saw the marijuana, they were not looking for it, and it was immediately apparent, based on how it looked and smelled, that it was marijuana. Thus, the marijuana in the front room was constitutionally seized pursuant to the plain view doctrine.

In summary, Officer Kenyon's initial warrantless entry into defendant's house was reasonable based on the exigent circumstances of rendering emergency assistance. In addition, the officers' decision to remain in defendant's house and turn on the lights even after speaking with defendant and his roommate was still within the scope of rendering emergency aid and, thus, constitutional. Finally, once the lights were on, the marijuana seized in defendant's front room was in plain view of Officer Austin. Therefore, the warrant obtained by the officers after seeing the marijuana was not fruit of the poisonous tree since the officers' conduct was constitutional in entering and remaining in defendant's house. *See State v.*

*McKinney*, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006) (holding that "[o]nly evidence discovered as a result of unconstitutional conduct constitutes fruit of the poisonous tree"). Therefore, the trial court properly denied defendant's motion to suppress.

## Conclusion

Based on the foregoing reasons, we affirm the trial court's judgment.


AFFIRMED.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).