IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-1229

 Filed: 15 August 2017

Forsyth County, Nos. 15 CRS 390, 15 CRS 52988

STATE OF NORTH CAROLINA

 v.

MARCUS MARCEL SMITH, Defendant.

 On certiorari review of judgment entered 12 April 2016 by Judge John O. Craig

III in Forsyth County Superior Court. Heard in the Court of Appeals 7 June 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Adrian
 W. Dellinger, for the State.

 Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.

 ELMORE, Judge.

 Three police officers entered defendant’s apartment to execute arrest warrants

issued for misdemeanor offenses. While two officers made the in-home arrest, the

other officer conducted a protective sweep of defendant’s apartment, leading to the

discovery and seizure of a stolen shotgun. Defendant moved to suppress the shotgun

as evidence obtained through an unlawful search and seizure, arguing that the officer

lacked authority to conduct the protective sweep, and the seizure could not be

justified under the “plain view” doctrine. The trial court denied defendant’s motion

to suppress. After the ruling, defendant pleaded guilty to possession of a firearm by
 STATE V. SMITH

 Opinion of the Court

a felon and, pursuant to defendant’s plea arrangement, the court dismissed the

charge of possession of a stolen firearm.

 We allowed defendant’s petition for writ of certiorari to review the trial court’s

order denying his motion to suppress. Upon review, we hold that (1) the officer was

authorized to conduct the protective sweep, without reasonable suspicion, because

the rooms in the apartment—including the bedroom where the shotgun was found—

were areas “immediately adjoining the place of arrest from which an attack could be

immediately launched,” Maryland v. Buie, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098,

108 L. Ed. 2d 281, 286 (1990); and (2) because the officer lacked probable cause to

believe that the shotgun was contraband “without conducting some further search of

the object,” “ ‘its incriminating nature [was not] immediately apparent’ ” and “the

plain-view doctrine cannot justify its seizure,” Minnesota v. Dickerson, 508 U.S. 366,

375, 113 S. Ct. 2130, 2137, 124 L. Ed. 2d 334, 345 (1993) (quoting Horton v. California,

496 U.S. 128, 136, 110 S. Ct. 2301, 2308, 110 L. Ed. 112, 123 (1990)) (citing Arizona

v. Hicks, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987)). Reversed.

 I. Background

 In January 2015, Officer Paier assumed a caseload of low-risk supervisees

including defendant, who was on probation for impaired driving. During a routine

absconder check, Officer Paier discovered outstanding arrest warrants against

defendant for absconding probation and failing to appear at a scheduled court date.

 -2-
 STATE V. SMITH

 Opinion of the Court

He verified defendant’s current address and relayed the information to dispatch.

Officer Joyce of the Kernersville Police Department assembled a squad, consisting of

Officers Stokes, Ziglar, and Castle, to execute the arrest warrants.

 On 1 April 2015, at approximately 11:00 p.m., the officers arrived at

defendant’s apartment complex. Officer Stokes staged with a K-9 in a back hallway

of the multi-unit building, while the other officers approached the front door of

defendant’s unit. When Officer Joyce knocked, defendant opened the door cautiously,

in his underwear, and confirmed his identity. Officers Ziglar and Castle entered the

apartment and immediately placed defendant in custody as Officer Joyce, wearing a

mounted body camera, conducted a protective sweep of the other rooms.

 The front door of the apartment leads directly into the living room. The living

room opens up on the back right corner, opposite the doorway, leading directly into

the kitchen. A short hallway, spanning only a few feet, runs perpendicular in between

the living room and the kitchen. The hallway is visible from the front door and more

closely resembles the center of a four-way intersection, connecting every room inside

the apartment: The living room and kitchen to the south, a bathroom to the east, an

empty bedroom to the north, and defendant’s bedroom to the west.

 Officer Joyce stated that he conducted the sweep for the officers’ safety, only

searching areas where individuals might be hiding. During the sweep, he saw a

shotgun leaned up against a wall in the entryway of defendant’s bedroom. The

 -3-
 STATE V. SMITH

 Opinion of the Court

bedroom door was open and the shotgun was visible, in plain view, from the hallway.

Officer Joyce walked past the shotgun to check defendant’s bedroom, confirming there

were no other occupants in the apartment. The entire sweep took less than two

minutes.

 After completing the sweep, Officer Joyce secured the shotgun “to have it in

our control and also check to see if it was stolen.” Once he confirmed the shotgun was

unloaded, he carried it into the living room, where defendant stood near the front

door, his hands cuffed behind his back, surrounded by Officers Ziglar and Castle.

Officer Joyce placed the shotgun on a couch, used his flashlight to examine the

receiver, and then turned over the shotgun to expose its serial number, which he

immediately called into Communications. When Communications reported the

shotgun stolen, the officers seized the weapon.

 II. Discussion

 Defendant argues that the trial court erred in denying his motion to suppress.

Our review of a trial court’s denial of a suppression motion is “strictly limited to

determining whether the trial judge’s underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s ultimate conclusions of

law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). “The trial court’s

 -4-
 STATE V. SMITH

 Opinion of the Court

conclusions of law . . . are fully reviewable on appeal.” State v. Hughes, 353 N.C. 200,

208, 539 S.E.2d 625, 631 (2000).

A. The Protective Sweep

 Defendant first challenges the protective sweep of his apartment. “A

‘protective sweep’ is a quick and limited search of premises, incident to an arrest and

conducted to protect the safety of police officers or others.” Maryland v. Buie, 494

U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed. 2d 276, 281 (1990), cited in State v.

Bullin, 150 N.C. App. 631, 640, 564 S.E.2d 576, 583 (2002). To be lawful, the sweep

must be “narrowly confined to a cursory visual inspection of those places in which a

person might be hiding.” Buie, 494 U.S. at 327, 110 S. Ct. at 1094, 108 L. Ed. 2d at

281. In Buie, the U.S. Supreme Court articulated two scenarios in which police

officers may conduct a protective sweep. First, incident to an arrest, officers may, “as

a precautionary matter and without probable cause or reasonable suspicion, look in

closets and other spaces immediately adjoining the place of arrest from which an

attack could be immediately launched.” Id. at 334, 110 S. Ct. at 1098, 108 L. Ed. 2d

at 286. Second, when an officer has “articulable facts which, taken together with

rational inferences from those facts, would warrant a reasonably prudent officer in

believing that the area to be swept harbors an individual posing a danger.” Id.

 The trial court concluded that the protective sweep of the apartment was valid

under the first prong of Buie. Defendant argues, however, that Officer Joyce was not

 -5-
 STATE V. SMITH

 Opinion of the Court

authorized to conduct a protective sweep of the bedroom, where the shotgun was

found, because the bedroom was not “immediately adjoining the place of arrest from

which an attack could be immediately launched.”

 Our appellate courts have not specifically addressed which areas might qualify

as “immediately adjoining the place of arrest,” but decisions from the federal courts

are instructive. In United States v. Lauter, 57 F.3d 212 (2d Cir. 1995), the police

executed an arrest warrant against the defendant in his small, basement apartment.

Id. at 213. The apartment consisted of two small, adjacent rooms. Id. After arresting

the defendant in the front room, the officers conducted a protective sweep of the back

room, where they discovered a shotgun protruding from underneath a bed. Id. at

213–14. The defendant moved to suppress the shotgun, arguing that the protective

sweep was impermissibly broad. Id. at 214, 216. Upholding the sweep under the first

prong of Buie, the court reasoned that “the back room was ‘immediately adjoining’ the

area in which [the defendant] was arrested,” and the police action “was well within

the scope of a permissible protective sweep, particularly in light of the small size of

the apartment.” Id. at 216–17 (citing United States v. Robinson, 775 F. Supp. 231,

235 (N.D. Ill. 1991)).

 Likewise, in United States v. Thomas, 429 F.3d 282 (D.C. Cir. 2005), the

defendant challenged the scope of a protective sweep inside his one-bedroom

apartment. Id. at 286. The front door of the apartment opened immediately into a

 -6-
 STATE V. SMITH

 Opinion of the Court

hallway, where the defendant was arrested. Id. at 284, 287. To the left was a living

room, and to the right were “doorways off the hallway leading to the kitchen,

bathroom, and bedroom.” Id. at 284. The court concluded that the bedroom, fifteen

feet from the apartment’s entrance, was “immediately adjoining the place of arrest”

because “every room swept ‘could be immediately accessed from the hallway’ ” and

“the entrance to the bedroom was a straight shot down the hallway from the spot

where [the defendant] was arrested.” Id. at 284–85, 287. Although the defendant

maintained that the living room and front hallway were the only “immediately

adjoining spaces,” the court declined to define the concept so narrowly:

 The safety of the officers, not the percentage of the home
 searched, is the relevant criterion. . . . If an apartment is
 small enough that all of it “immediately adjoin[s] the place
 of arrest” and all of it constitutes a space or spaces “from
 which an attack could be immediately launched,” . . . then
 the entire apartment is subject to a limited sweep of spaces
 where a person may be found.

Id. at 287–88 (alteration in original) (citations omitted) (quoting Buie, 494 U.S. at

327, 334, 110 S. Ct. at 1094, 1098, 108 L. Ed. 2d at 281, 286).

 Guided by the foregoing decisions, we agree with the trial court’s conclusion

that Officer Joyce had authority to conduct a protective sweep of the rooms in the

apartment. As the courts findings indicate, and as the video footage shows, defendant

was in the living room when Officers Ziglar and Castle entered and placed him in

handcuffs. Officer Joyce proceeded, “without any significant delay or hesitation,” to

 -7-
 STATE V. SMITH

 Opinion of the Court

conduct a sweep of the remaining rooms “for the sole purpose of determining whether

there were any other occupants in the apartment that could launch an attack on the

officers.” Every room in the apartment was connected by the short hallway, and the

apartment was “small enough that a person hiding in any area outside of the living

room could have rushed into the living room without any warning.” Based on the size

and layout of the apartment, the trial court properly concluded that “[a]ll of the

rooms”—including defendant’s bedroom where the shotgun was found—“were part of

the space immediately adjoining the place of arrest and from which an attack could

have been immediately launched.”

B. Seizure of the Shotgun

 Next, defendant challenges the seizure of the shotgun. The trial court denied

defendant’s motion to suppress because Officer Joyce was permitted to conduct “a

quick protective sweep of the apartment and the shotgun was in plain view.”

Defendant argues that the seizure cannot be justified under the plain view doctrine

because the incriminating nature of the shotgun was not immediately apparent.

Relying on the U.S. Supreme Court’s decision in Arizona v. Hicks, 480 U.S. 321, 107

S. Ct. 1149, 94 L. Ed. 2d 347 (1987), defendant also contends that Officer Joyce

conducted an unlawful search, without probable cause, by manipulating the shotgun

to reveal its serial number.

 -8-
 STATE V. SMITH

 Opinion of the Court

 Although warrantless searches are presumptively unreasonable, there are

circumstances in which “ ‘police may seize evidence in plain view without a warrant.’ ”

Horton v. California, 496 U.S. 128, 134, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112, 121

(1990) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S. Ct. 2022, 2037,

29 L. Ed. 2d 564, 582 (1971)). The plain view doctrine allows an officer to seize

evidence without a warrant if:

 (1) the officer views the evidence from a place where he has
 [a] legal right to be, (2) it is immediately apparent that the
 items observed constitute evidence of a crime, are
 contraband, or are subject to seizure based upon probable
 cause, and (3) the officer has a lawful right of access to the
 evidence itself.

State v. Alexander, 233 N.C. App. 50, 55, 755 S.E.2d 82, 87 (2014) (citing State v.

Nance, 149 N.C. App. 734, 740, 562 S.E.2d 557, 561–62 (2002)); see also Horton, 496

U.S. at 136–37, 110 S. Ct. at 2308, 110 L. Ed. 2d at 123; State v. Mickey, 347 N.C.

508, 516, 495 S.E.2d 669, 674, cert. denied, 525 U.S. 853, 119 S. Ct. 131, 142 L. Ed.

2d 106 (1998). The burden rests with “the State to establish all three prongs of the

plain view doctrine.” State v. Graves, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772

(1999).

 The “immediately apparent” requirement is “ ‘satisfied if the police have

probable cause to believe that what they have come upon is evidence of criminal

conduct.’ ” State v. Wilson, 112 N.C. App. 777, 782, 437 S.E.2d 387, 389–90 (1993)

(quoting State v. White, 322 N.C. 770, 777, 370 S.E.2d 390, 395, cert. denied, 488 U.S.

 -9-
 STATE V. SMITH

 Opinion of the Court

958, 109 S. Ct. 399, 102 L. Ed. 2d 387 (1988)); see also State v. Carter, 200 N.C. App.

47, 54, 682 S.E.2d 416, 421 (2009). “Probable cause exists where the facts and

circumstances within [the officer’s] knowledge and of which [he] had reasonable

trustworthy information [are] sufficient in themselves to warrant a man of reasonable

caution in the belief that an offense has been or is being committed.” Brinegar v.

United States, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 1310–11, 93 L. Ed. 1879, 1890

(1949) (citation omitted) (internal quotation marks omitted), quoted in State v.

Zuniga, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984). A seizure is valid only “when

the objective facts known to the officer meet the standard required.” State v. Peck,

305 N.C. 734, 741, 291 S.E.2d 637, 641–42 (1982) (citations omitted); see also

Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537, 544

(2004) (“Whether probable cause exists depends upon the reasonable conclusion to be

drawn from the facts known to the [ ] officer at the time . . . .” (citation omitted)).

“If . . . the police lack probable cause to believe that an object in plain view is

contraband without conducting some further search of the object,” then “its

incriminating nature [is not] immediately apparent” and “the plain-view doctrine

cannot justify its seizure.” Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130,

2137, 124 L. Ed. 2d 334, 345 (1993) (alteration in original) (citations omitted)

(internal quotation marks omitted).

 - 10 -
 STATE V. SMITH

 Opinion of the Court

 Observing the shotgun in plain view did not provide Officer Joyce with

authority to seize the weapon permanently. The State’s evidence at the suppression

hearing failed to establish that, based on the objective facts known to him at the time,

Officer Joyce had probable cause to believe the weapon was contraband or evidence

of a crime. The officers were executing arrest warrants issued for misdemeanor

offenses and were not aware that defendant was a convicted felon. Before the seizure,

Officer Joyce asked the other officers in the apartment if defendant was a convicted

felon, which they could not confirm. Officer Joyce testified that it was Officer Stokes

who informed him of defendant’s status, but Officer Stokes never entered the

apartment, and Officer Joyce could not recall when he learned defendant was a

convicted felon:

 [PROSECUTOR:] So at what point during this encounter—
 you know he’s on probation. You’ve got him in custody.
 You see a shotgun in there which you’re going to seize for
 protection reasons. But at what point did you also become
 suspicious that the defendant might be a convicted felon
 and not be allowed to possess that weapon because of his
 status as a felon or a probation—being on probation?

 [OFFICER JOYCE:] I believe Officer Stokes had that
 information stating that he was a felon. And at that—
 Officer Stokes, I believe, was the one that made me aware
 of that.

 [PROSECUTOR:] Okay. So at some point you made the
 determination that he was a convicted felon?

 [OFFICER JOYCE:] Correct.

 - 11 -
 STATE V. SMITH

 Opinion of the Court

 [PROSECUTOR:] All right. Do you know at what point
 that occurred in this, you know, scheme? You’ve got a lot
 going on. But at what point that occurred for you.

 [OFFICER JOYCE:] For me, I really—I really don’t know.
 It may be before or it may be after. The only thing I
 remember was the gun was stolen.

 [PROSECUTOR:] How did you determine it was stolen?

 [OFFICER JOYCE:] I read the serial number to
 Communications, and they advised it was stolen out of
 Guilford County.

Defense counsel elicited the same testimony from Officer Joyce on cross-examination:

 [DEFENSE COUNSEL:] And I believe it was your
 testimony that you said Officer Stokes had the information
 about Mr. Smith having a felony conviction. Is that
 correct?

 [OFFICER JOYCE:] I believe—I believe it was Officer
 Stokes.

 ....

 [DEFENSE COUNSEL:] And would it surprise you that
 [Officer Stokes] said, during further investigation of Mr.
 Smith, it was then determined he was a previously
 convicted felon?

 [OFFICER JOYCE:] I knew at some point we found out he
 was a felon.

 [DEFENSE COUNSEL:] But it was your testimony you
 couldn’t remember if it was before or after you seized the
 gun?

 [OFFICER JOYCE:] Correct. I just know the gun was
 stolen.

 - 12 -
 STATE V. SMITH

 Opinion of the Court

 The dissent argues that, even if the officers did not know defendant had been

convicted of a felony, they did know defendant was on probation for committing some

offense. Thus, the dissent reasons, it was “immediately apparent that the shotgun

was contraband” because a ban on possessing firearms is a “regular condition” of

probation. But the law does not require a sentencing judge to impose the regular

conditions of probation on every probationer. See N.C. Gen. Stat. § 15A-1343(b)

(2015). And there is no evidence to suggest the officers knew the specific terms of

defendant’s probation, including whether the terms of defendant’s probation

prohibited him from possessing firearms, at any time during the warrant service.1

The incriminating character of the shotgun became apparent only upon some further

action by the officers.

 When “unrelated to the objectives of the authorized intrusion,” even the slight

movement of an object, “which expose[s] to view [its] concealed portions,” is

impermissible. Arizona v. Hicks, 480 U.S. 321, 325, 107 S. Ct. 1149, 1152, 94 L. Ed.

2d 347, 354 (1987). In Hicks, while searching for weapons in the defendant’s

apartment, one of the officers noticed two sets of expensive stereo equipment that

“seemed out of place.” Id. at 323, 107 S. Ct. at 1152, 94 L. Ed. 2d at 353. Suspecting

that the equipment was stolen, the officer maneuvered some of the stereo components

1 Defendant’s probation officer was not present during the warrant service.

 - 13 -
 STATE V. SMITH

 Opinion of the Court

to reveal their serial numbers, which he then read, recorded, and reported by phone

to police headquarters. Id. When headquarters confirmed that the equipment was

stolen, the officer seized it immediately. Id. The U.S. Supreme Court concluded that

moving the equipment “constitute[d] a ‘search’ separate and apart from the

search . . . that was the lawful objective of [the officer’s] entry into the apartment.”

Id. at 324–25, 107 S. Ct. at 1152, 94 L. Ed. 2d at 353–54. By taking action “unrelated

to the objectives of the authorized intrusion,” the officer “produce[d] a new invasion

of [the defendant’s] privacy unjustified by the exigent circumstances that validated

the entry.” Id. at 325, 107 S. Ct. at 1152, 94 L. Ed. 2d at 354. As to the reasonableness

of the search, the Court held that it could not be justified under the plain view

doctrine because the officer lacked probable cause: “A dwelling-place search, no less

than a dwelling-place seizure, requires probable cause, and there is no reason in

theory or practicality why application of the ‘plain view’ doctrine would supplant that

requirement.” Id. at 328, 107 S. Ct. at 1154, 94 L. Ed. 2d at 356.

 As in Hicks, where the officer manipulated the stereo equipment to expose its

serial number, here Officer Joyce took similar steps to uncover the serial number on

the shotgun. After moving the weapon into the living room, he placed it on the couch,

shined his flashlight on the receiver momentarily, and then turned the shotgun over

to expose the serial number, which he immediately called into Communications. As

Hicks instructs, such action constitutes a search, separate and apart from the lawful

 - 14 -
 STATE V. SMITH

 Opinion of the Court

objective of the entry, even though it “uncovered nothing of any great personal value

to [defendant]—serial numbers rather than . . . letters or photographs.” Hicks, 480

U.S. at 325, 107 S. Ct. at 1152–53, 94 L. Ed. 2d at 354.

 The search cannot be justified under the plain view doctrine because the

shotgun’s incriminating nature was not immediately apparent. There is no evidence

in the record to indicate that Officer Joyce had probable cause—or even reasonable

suspicion—to believe the shotgun was stolen. It was only after the unlawful search

that he had reason to believe the shotgun was evidence of a crime. See Graves, 135

N.C. App. at 220, 519 S.E.2d at 773 (concluding that the State failed to present any

evidence that the officer “recognized or even suspected that the brown paper wads

contained contraband before he picked them up and before he unraveled them”); cf.

State v. Price, 233 N.C. App. 386, 402, 757 S.E.2d 309, 319 (2014) (concluding that

the “immediately apparent” requirement was met where the “defendant, while

holding his rifle, admitted that he was a convicted felon”); United States v.

Malachesen, 597 F.2d 1232, 1234–35 (8th Cir. 1979) (concluding that a pistol, seized

temporarily for the officers’ safety, became contraband subject to seizure when an

officer learned from two other detectives searching the premises that the defendant

had a prior felony conviction).

 III. Conclusion

 - 15 -
 STATE V. SMITH

 Opinion of the Court

 Although Officer Joyce had authority to conduct a protective sweep of the

apartment, the seizure of the shotgun cannot be justified under the plain view

doctrine. Based on the evidence presented at the suppression hearing, the State

failed to show that the incriminating nature of the shotgun was immediately

apparent. Because the shotgun is evidence obtained through an unlawful search and

seizure, the trial court erred in denying defendant’s motion to suppress.

 REVERSED.

 Judge DIETZ concurs.

 Judge ARROWOOD dissents by separate opinion.

 - 16 -
 No. COA16-1229 – State v. Smith

 ARROWOOD, Judge, dissenting.

 I agree with the majority that the sweep of the defendant’s apartment was

lawful. However, I disagreee that the warrantless seizure of the shotgun in plain

view was unlawful. For that reason, I respectfully dissent.

 As the majority points out,

 [u]nder the plain view doctrine, a warrantless seizure is
 lawful if (1) the officer views the evidence from a place
 where he has legal right to be, (2) it is immediately
 apparent that the items observed constitute evidence of a
 crime, are contraband, or are subject to seizure based upon
 probable cause, and (3) the officer has a lawful right of
 access to the evidence itself.

State v. Alexander, 233 N.C. App. 50, 55, 755 S.E.2d 82, 87 (2014). The majority

opinion establishes that the first and third prongs of the test are satisfied. Therefore,

the sole issue to be determined is whether the second prong of the test is satisfied.

 The majority concludes that the incriminating nature of the shotgun was not

immediately apparent because (1) the State’s evidence failed to establish that Officer

Joyce knew defendant was a convicted felon at the time he seized the shotgun; and

(2) Officer Joyce did not know the shotgun was stolen until a further search of the

shotgun. While the majority’s analysis is not incorrect, I conclude that regardless of

whether Officer Joyce knew that defendant was a felon or knew that the shotgun was

stolen, it was immediately apparent that the shotgun was contraband.

 Contraband includes “[g]oods that are unlawful to . . . possess.” Black’s Law

Dictionary 317 (7th ed. 1999). On 4 April 2012, defendant was placed on supervised
 STATE V. SMITH

 Arrowood, J., dissenting.

probation under the regular terms and conditions of probation. Pursuant to the

provisions of N.C. Gen. Stat. § 15A-1343(b)(5) (2015), “[a]s a regular condition[] of

probation, a defendant must . . . [p]ossess no firearm . . . .” Thus, under the regular

terms and conditions of probation, the shotgun was contraband.

 Given that the officers were serving a warrant for a probation violation, it was

immediately apparent that the shotgun was contraband. Therefore, I would uphold

the warrantless seizure of the shotgun under the plain view doctrine and affirm the

trial court’s order.

 2