HUNTER, JR., Robert N., Judge.
Jonathan Mykeil Robinson ("Defendant") filed a motion to suppress evidence supporting his indictments charging him with felony possession of a Schedule I controlled substance; felony possession of a Schedule II controlled substance; misdemeanor possession of drug paraphernalia; misdemeanor possession of a Schedule II controlled substance; misdemeanor possession of marijuana; and misdemeanor possession of drug paraphernalia. On 19 September 2017, the trial court orally denied Defendant's motion to suppress, and subsequently entered a written order.[1] On 19 September 2017, Defendant pled guilty to the charges. On appeal, Defendant contends the trial court erred in denying his motion to suppress. We agree.
I. Factual and Procedural Background
On 13 June 2016, a Mecklenburg County grand jury indicted Defendant on the following charges:
Possession of a Schedule I controlled substance (bk-MDEA (ethylone)) in 15 CRS 244267;
Possession of a Schedule II controlled substance (cocaine) and possession of drug paraphernalia in 15 CRS 244268;
Possession of a Schedule II controlled substance (hydrocodone) in 15 CRS 244269;
Possession of up to one-half ounce of marijuana in 15 CRS 244270; and
Possession of marijuana drug paraphernalia in 15 CRS 244271.
On 6 October 2016, pursuant to N.C. Gen. Stat. § 15A-977(a), et. seq ., Defendant filed a motion to suppress "any and all evidence seized from [Defendant's] person" by the officers as a result of a strip search. On 19 September 2017, the trial court heard the motion, heard testimony from the police officers, viewed body camera video of the traffic stop, reviewed Charlotte-Mecklenburg Police Department ("CMPD") directives for conducting searches of persons, and heard arguments from both sides.
Testimony of Officer Williams
The State called Officer Matthew Williams, who testified to the following. On 8 December 2015, Officer Williams, a member of the CMPD Focus Mission Team,[2] had the duty to "investigate crimes involving drugs, weapons, and violent offenders" in the Independence Division of patrol. At about 6 p.m., while driving on patrol in a marked patrol car, he observed Defendant riding as a front seat passenger in a vehicle-a gray Honda Accord-on Village Lake Drive in Mecklenburg County. He and his partner, Officer Patrick White, had previously received a "be on the lookout" report from an additional unmarked unit that had seen the vehicle stop at a residence, saw one of the occupants talking to someone at the house, and then saw the vehicle pull back out.
While driving behind the vehicle, which had its windows up, Officer Williams could detect a "constant" smell of marijuana coming from the vehicle, and he noticed the vehicle's expired tag. After following the vehicle for about two-to-five minutes, he then conducted a traffic stop. The vehicle pulled in to a shopping center and stopped just in front of the Family Dollar store.
Officers Williams and White, who were in uniform, got out of the police car, approached the Honda, and could then see Defendant "rummaging around" with his "hands in front of him, towards his waistband ... making a stuffing motion." From his training, Officer Williams knew "such an action might be indicative of them concealing contraband." The driver-Ms. Jefferies-was the only other person in the car. As Officer Williams approached the driver's side, he could still smell marijuana coming from the vehicle. Officer Williams asked the driver whether she had any marijuana in the vehicle. Officer Williams testified the driver answered "she had previously smoked in the vehicle," explained "that would be why the vehicle smelled," and said "she didn't have any marijuana currently." She showed Officer Williams a "burnt blunt" in the ashtray. Officer Williams asked the driver to step out of the vehicle so he could conduct a search. After the driver got out of the car, Officer Williams "still smelled weed coming from the area of the car." He had no indication at that time that Defendant smelled of marijuana, nor was he aware of any weapons, "but the tucking the shirt was a concern."
After Officer Williams finished searching the driver, which yielded no additional contraband, Officer White asked Defendant to step out of the passenger seat. Officer Williams noticed during Officer White's attempted frisk of Defendant that they "began struggling." Officer Williams then went to assist Officer White. Officer Williams observed that Officer White had handcuffed Defendant, and Defendant had moved his other hand in front of him. Officer Williams "grabbed a hold of the Defendant's loose arm and put it behind his back while Officer White put handcuffs on him." He "believe[d]" Officer White then placed Defendant in the patrol car, and Officer Williams then "concluded [his] interaction with the driver."
Subsequent to Officer Williams' testimony, the court viewed a body camera video, which showed the "tucking" or "stuffing" action of Defendant "putting his hands near his waistband." When viewing the video, Officer Williams confirmed he could hear Officer White refer to a "bulge," and that at that point, Officer White searched Defendant.
Testimony of Officer White
The State called Officer White. Officer White testified he was also a member of the Independence Division Crime Reduction Unit with CMPD. On 8 December 2015, Officer White came in contact with Defendant in an area known to be a "drug hot spot." From a plainclothes officer conducting directed patrol in the area, Officers White and Williams received a radio call about a "vehicle that smelled strongly of marijuana." Officer White testified that the officer who provided radio notice saw a man come out of his house and interact with the people in the car for several minutes. The man went back into the house, and the car left.
As Officers White and Williams followed the vehicle, they rolled down their windows and "were actually able to smell an odor of marijuana" as well. They also learned the tag was expired, and as the vehicle pulled into the Family Dollar shopping center, the officers initiated a traffic stop. Officer White testified that as he got out of his patrol vehicle, he "could smell a very strong odor of burnt marijuana," and he "noticed that the passenger window was not there" and was "covered in clear, like, packing material."
As Officer White approached the vehicle, he could see there were two occupants, the female driver, and Defendant in the front passenger seat. He saw Defendant "leaned back" in the seat and "rapidly tucking something into his pants right around his waistband area." Officer White testified he thought it was "an unknown item, possibly a weapon[.]" He further explained that "according to [his] training and experience weapons are frequently present when drugs are present[,]" so he was "concern[ed] that the Defendant ... was attempting to conceal potentially a weapon in his front waistband area." He could still detect the odor of burnt marijuana.
As Officer White approached the vehicle, Defendant opened the door and started to step out. Officer White asked Defendant to remain seated and requested identification. Defendant had no identification, but he provided his name, address, and date of birth. The smell of marijuana was "very strong," so Officer White asked Defendant if they were smoking marijuana in the car-to which Defendant responded he was not, but the driver was.
Officer White testified that Officer Williams was dealing with the driver and was going to initiate a probable cause search of the vehicle, based on the odor of marijuana. Once Officer Williams finished interacting with the driver, Officer White had Defendant step out of the vehicle. He asked Defendant if he was in possession of any weapons, to which Defendant responded he was not. Based on Defendant's "demeanor and the motions ... when he tucked something into his front waistband area," Officer White "belie[ved] that there was a reasonable likelihood that there was a weapon present based on the fact that there was an odor of marijuana." Officer White explained: "[Defendant] was rapidly attempting to conceal something in his front groin waistband area, which is oftentimes a popular spot to conceal a firearm, especially along the waistline, because it holds weapons up close to the body."
Officer White conducted a Terry frisk of Defendant. As he did so, he noticed an "individualized" smell of unburnt marijuana at Defendant's ankle area as well as an odor of marijuana around his waist.[3] When Officer White ran his hand up, he noticed a "large bulge" in Defendant's groin area that "did not appear to be natural." He felt a "crinkle" and "noticed the odor of marijuana was slightly stronger."
Suspecting the bulge was marijuana, Officer White detained Defendant in handcuffs. After the officer cuffed one wrist, Defendant then turned his body towards the rear of the vehicle and attempted to flee, jerk, and run. Officer White testified he then "used [his] body weight to press [Defendant] up against the passenger side of the vehicle." Officer Williams came to assist. The officers successfully handcuffed Defendant, and Officer White kept Defendant "leaning up against the passenger side of the vehicle with [the officer's] hand around [Defendant's] arm." Officer White noticed Defendant was "breathing extremely rapidly," his "heart rate was highly elevated," and his "pulse in his biceps ... was extremely high based on the physical activity." Officer White asked Defendant what was tucked in his groin area.[4] The officer testified he had not placed Defendant under arrest, nor had he decided to charge him with any crime.
Based on the contraband found on Defendant's person, the smell of marijuana, Defendant's initial attempt to jerk away from the officer, his stuffing or tucking motion in his pants, and his nervousness, Officer White believed a further search of Defendant's person was necessary. He walked Defendant to the rear of the patrol car and asked Defendant if marijuana was inside his pants. Defendant reached into his pants, removed a small bag of marijuana, and handed it to Officer White.[5] Officer White requested backup so he could conduct a further search of Defendant in a more secure location and specifically, so he could be strip-searched according to CMPD directives.
Officer White testified when cross-examined that he did not place Defendant under arrest prior to a further search. Rather, he placed Defendant under arrest once he found Defendant to be in possession of the marijuana. According to Officer White, once Defendant provided the marijuana from his groin area, the officer would have written him a citation and allowed Defendant to go on his way. The additional strip search was necessary, according to Officer White, based on "[t]he length of time that it took the Defendant to retrieve the marijuana inside of his pants ... [and] his still nervous demeanor[.]" The officer "believe[d] that there was something else concealed inside the Defendant's pants."
Following departmental policy, Officer White conducted a strip search by taking Defendant inside the Family Dollar store, to a private area, with the officer's body camera turned off. Officer White did not conduct a body cavity search. On recross, defense counsel asked Officer White: "Exigent circumstances. No exigent circumstances here because you knew there wasn't a weapon; isn't that right?" He replied, "There was no weapon present, correct."
Argument on the Motion to Suppress
Following Officer White's testimony, the State put forth no further evidence. Counsel for Defendant offered into evidence CMPD directives on conducting strip searches, 500-004-A.
On the motion to suppress, the State argued as to individualized probable cause to search Defendant that the officers had a "particularized reason." The State based this on Defendant's tucking motion, the odor of marijuana, the discovery of the bulge in his waist area during the Terry frisk, and his reaction when the officers put him in handcuffs. Such actions indicated Defendant was "trying to hide something from those officers[.]" The State argued further that the strip search was necessary in order to do a "thorough and full investigation[.]"
While Defendant conceded the initial stop was valid based on the expired tag, and the officers were justified in searching the car based on the driver's admission that she had smoked marijuana and that a "blunt" was in the ashtray, Defendant argued the officers had no individualized suspicion to conduct the Terry frisk. Because there was no evidence Defendant had a weapon on him, the Terry stop was not reasonable. Defendant also challenged the strip search in the Family Dollar store, contending that once he provided the bag of marijuana to Officer White, the officer had no justification to conduct the strip search. Defendant asserted the officer had stated only that he "thought there was something more."
During the hearing, the court commented the motion was "very well-argued" by both sides. Prior to entering the order, the trial court, as "an aside," stated a belief that, "had the search not taken place at the Family Dollar, [the contraband] would have been inevitably discovered by [Defendant's] arrest if he were searched at the Mecklenburg County Jail." Defendant's counsel answered that based on Officer White's testimony about writing Defendant a citation, had the strip search not continued, there would not have been an arrest.
The court made the following findings:[6]
7) Additionally, based on the body-worn cameras of the two officers, the sunroof of the vehicle was open. After smelling the odor of marijuana emanating from the vehicle and recognizing the vehicle was operating on an expired tag, a traffic stop was conducted in a shopping center off of Village Lake Drive.
11) That upon approaching the vehicle each officer indicated a smell of burnt marijuana emanating from the vehicle.
13) As the officers approached the vehicle, Officer Williams noticed that the Defendant began rummaging around the front of the vehicle and making a stuffing or tucking motion in his pants.
14) That Officer Williams is a trained officer with the Charlotte-Mecklenburg Police Department and believed that this motion could indicate the presence of a weapon or contraband.
19) Officer White upon approaching the Defendant's side of the vehicle again smelled an odor of marijuana emanating from the vehicle.
20) Officer White indicated again that he noticed the Defendant rapidly tucking something into his pants.
21) As the officer approached the Defendant's side of the vehicle, the Defendant swung his door open and put his right foot out as if trying to exit the vehicle.
25) Upon trying to put the Defendant into handcuffs to conduct a Terry stop, the Defendant became resistant and pulled away from the officer in an attempt to elude the officer.
28) Officer White conducted his Terry frisk and noticed an individualized smell of marijuana coming from the Defendant's ankle area, that smell being burnt marijuana, and additionally smelling marijuana around the waist area of the Defendant.
30) Upon the discovery of the odor of marijuana, the bulge in the Defendant's pants, the marijuana smell emanating from the vehicle, and the Defendant's reaction at the passenger side door prior to the Terry stop, the Defendant was taken to the officer's patrol car in handcuffs so that the officer could continue his investigation.
32) The Defendant eventually reached into his pants and grabbed a small baggy of marijuana and handed it over to Officer White.
33) Based on the contraband found on the Defendant's person and the fact that the Defendant smelled of marijuana, that the Defendant initially tried to jerk away from the officer and that the Defendant displayed a stuffing or tucking motion in his pants, Officer White believed that a further search of the Defendant's person was necessary.
34) Officer White requested backup so that the Defendant could be searched in a more secure location and more specifically so the Defendant could be strip searched according to procedures prescribed by the Charlotte-Mecklenburg Police Department.
35) The Defendant was taken into the Family Dollar store restroom, the body cameras were turned off, and a strip search was done in private.
36) As a result of the strip search, additional contraband was found on the Defendant.
Based on those findings, the trial court concluded:
The Court CONCLUDES AS A MATTER OF LAW that the stop of the suspect vehicle was conducted with reasonable suspicion based on the expired tag. The Court also concludes as a matter of law that the Terry frisk of the Defendant was done based on the officers' training and experience and the belief that the Defendant may possess a weapon based on his movements in the vehicle and the nature of the offense. The Court also concludes as a matter of law that the subsequent strip search of the Defendant was based on probable cause, based on the totality of the circumstances: Being that the odor of marijuana was emanating from the vehicle; that the Defendant made movements to his crotch area prior to encountering the police; that the Defendant had individualized marijuana odors emanating from his ankle and waist area; that the Defendant attempted to jerk away from the officers; that the Defendant possessed a bulge in his waist area that turned out to be marijuana.
Taking the totality of the circumstances, the subsequent search in the Family Dollar does not violate the Defendant's Fourth Amendment right of illegal search and seizure.
Based on the findings of fact and conclusions of law, on 19 September 2017 the trial court dictated an order in open court, and subsequently placed the order in writing, denying Defendant's motion to suppress.
Defendant's Objections
Defendant objected to (1) the court's "conclusions of law that Officer White believed he had probable cause to ask the Defendant to exit the vehicle"; (2) the court's "findings of fact that there was a Terry frisk and also why reasonably the Terry frisk should be conducted"; (3) the court "saying that [Officer White] put the Defendant in handcuffs only to - - and was not under arrest at the time"; (4) Officer White's "conclusion that further search of [Defendant's] person after finding the marijuana was justified based upon [Officer White's] - - the actions he observed of the Defendant"; (5) the court's "conclusions of law that the Terry stop was valid and that the strip search was also based on probable cause of Officer White."
Defendant's Plea
Following the trial court's ruling, on 19 September 2017, Defendant entered a guilty plea on all counts, pursuant to North Carolina v. Alford , 400 U.S. 25 (1970), and expressly reserved his right to appeal the denial of his motion to suppress. To determine whether a factual basis existed for the plea, the trial court considered the evidence presented at the suppression hearing and additional information from the State. The State asserted that while inside the Family Dollar, the officers heard Defendant in the bathroom trying to throw contraband in the toilet. Upon conducting the strip search, the officers seized a purple Crown Royal bag from Defendant's right pants leg. A lab analysis subsequently revealed the bag contained 10 hydrocodone pills, 1.03 grams of cocaine, and 0.53 grams of bk-MDEA ethylone. The officers also found $460.
The trial court found a factual basis existed, accepted Defendant's plea, consolidated his convictions for a single judgment, 15 CRS 244267, and sentenced Defendant as a Prior Record Level II, Class I felony offender to a prison term of 4 to 14 months. The court suspended Defendant's sentence and placed him on supervised probation for 18 months. Following entry of judgment, Defendant's counsel entered oral notice of appeal in open court "on the adverse ruling[.]" On 21 September 2017, Defendant returned to the court to clear up a clerical error on the plea transcript concerning the potential maximum punishment he faced, received the same sentence, and again gave notice of appeal in open court.
II. Petition for Writ of Certiorari
As an initial matter, we address Defendant's notice of appeal. The order entered 19 September 2017 was a final judgment, following Defendant's entry of an Alford plea to all charges. Defendant appealed pursuant to N.C. Gen. Stat. §§ 7A-27(b)(4), 15A-979(b) and 15A-1444(e), and in the alternative, filed a petition for certiorari review pursuant to Rule 21(a)(1) of the N.C. Rules of Appellate Procedure.
Appellate Rule 4, which governs entry of notice of appeal in criminal cases, states:
(a) Manner and Time. Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a criminal action may take appeal by
(1) giving oral notice of appeal at trial, or
(2) filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment or order
....
N.C. R. App. P. 4(a).
Between May and August 2018, this Court granted Defendant four extensions of time for filing and serving his brief. In granting the motion to extend the time to file until 1 August 2018, this Court added, "No further extensions of time shall be allowed in the absence of a showing of extraordinary cause." On 1 August 2018, Defendant requested yet another extension. This Court ordered on 6 August 2018, "Defendant-Appellant's brief shall be filed today, 6 August 2018." The Court also noted, "No further extensions of time shall be allowed." Defendant filed his brief with this Court on 6 August 2018. In the event this Court deemed Defendant's right to appeal time barred pursuant to the requirements of Appellate Rule 4, Defendant filed a petition for writ of certiorari pursuant to Rule 21(a)(1) of the N.C. Rules of Appellate Procedure seeking review of his judgments.
In our discretion, we grant Defendant's petition for writ of certiorari and consider the merits of his appeal.
III. Standard of Review
On review of a trial court's ruling on a motion to suppress, this Court must determine "only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the court's conclusions of law." State v. Pulliam , 139 N.C. App. 437, 439-40, 533 S.E.2d 280, 282 (2000) (citing State v. Rhyne , 124 N.C. App. 84, 88-89, 478 S.E.2d 789, 791 (1996) ). This Court is "bound by the trial court's findings of fact if such findings are supported by competent evidence in the record; but the conclusions of law are fully reviewable on appeal." State v. Smith , 346 N.C. 794, 797, 488 S.E.2d 210, 212 (1997). This Court reviews the trial court's conclusions of law de novo . State v. Biber , 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). " 'Under a de novo review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." Id. , 712 S.E.2d at 878 (quoting State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) ).
IV. Analysis
In his sole assignment of error, Defendant contends the trial court erred by denying his motion to suppress.[7] More specifically, Defendant contends the officers conducted a warrantless, "roadside strip search" of him without probable cause or exigent circumstances to justify the search.
A. Preservation of Argument on Appeal
We consider the State's argument that Defendant did not preserve for appellate review the challenge to the strip search. To preserve an issue for appellate review, a party must present to the trial court a "timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). The party must also "obtain a ruling upon the party's request, objection, or motion."Id .
In both the trial court and on appeal, Defendant asserted the officers lacked probable cause and exigent circumstances to justify the search. Specifically, Defendant's counsel argued:
There's nothing there to give that officer reason to go forward with an invalid CMPD policy issue strip search ... What gives them a more reasonable basis to have a strip search done on this man?
I would argue to you, respectfully, the State hasn't shown anything except, yeah, I thought there was more .... What else was there the State could articulate to be able to search this man in the Family Dollar store broom closet[?]
The trial court then "note[d]" that the issue was "well-argued" by both sides. The court explained it considered whether "each of these scenarios provides building blocks for probable cause to allow each of the searches to take place." In denying Defendant's motion to suppress, the court ruled in both its oral and written orders on Defendant's challenge that the strip search did not violate Defendant's right to be free from unreasonable search and seizure. In the written order, the trial court concluded as a matter of law that "the subsequent strip search of the Defendant was based on probable cause, based on the totality of the circumstances."
We find Defendant preserved for appellate review his challenge to the strip search, and the trial court's ruling on the challenge.
B. Warrantless Search and Seizure
"Generally, warrantless searches are not allowed absent probable cause and exigent circumstances, the existence of which are factual determinations that must be made on a case by case basis." State v. Harper , 158 N.C. App. 595, 602, 582 S.E.2d 62, 67 (2003) citing State v. Harris , 145 N.C. App. 570, 580-81, 551 S.E.2d 499, 506 (2001)disc. review denied , 355 N.C. 218, 560 S.E.2d 146 (2002). Under North Carolina law, a warrantless strip search is constitutional only if there are "both probable cause and exigent circumstances that show some significant government or public interest [that] would be endangered were the police to wait until they could conduct the search in a more discreet location - usually at a private location within a police facility." State v. Battle , 202 N.C. App. 376, 388, 688 S.E.2d 805, 815, dis. rev. denied , 364 N.C. 327, 700 S.E.2d 926 (2010) (emphasis added). It is the State's "heavy burden" to show how a warrantless search or seizure is exempted from this requirement. State v. Graves , 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999).
1. Probable Cause
"Probable cause is a flexible, common-sense standard ... [which] ... does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required." State v. Zuniga , 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984). The issue is whether the circumstances "would warrant a man of reasonable caution in believing that the defendant was in possession of drugs and was hiding evidence which would incriminate him." State v. Peck , 305 N.C. 734, 742, 291 S.E.2d 637, 642 (1982).
Here, the trial court's findings of fact establish that, after Defendant turned over the contraband, the officers' subsequent observations could reasonably lead them to believe it was probable he had additional contraband on his person. The court found Defendant "eventually" retrieved the marijuana from his pants. Additionally, the court found "Officer White believed that a further search of Defendant's person was necessary" because of "contraband found on the Defendant's person," "the fact that Defendant smelled of marijuana," "Defendant initially tried to jerk away from the officer," and "Defendant displayed a stuffing or tucking motion in his pants." The record also shows Officer White's expressed concern about the "length of time it took the Defendant to retrieve the marijuana inside of his pants," and "in conjunction with his still nervous demeanor," this led the officer to "believe that there was still something concealed inside the Defendant's pants."
We find it reasonable under such circumstances for the officers to believe Defendant possessed drugs or other evidence that would incriminate him. See Peck , 305 N.C. at 742, 291 S.E.2d at 642. Thus, we agree with the trial court that there was probable cause to conduct a strip search of Defendant in order to search for additional contraband.
2 Exigent Circumstances
For the warrantless, roadside strip search to be constitutional, in addition to probable cause the State also needed to show that exigent circumstances existed, such that some significant governmental or public interest would be endangered had the officers waited to conduct the search in a more private place. See State v. Allison , 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) ; see also Battle , 202 N.C. App. at 388, 688 S.E.2d at 815. Exigent circumstances exist if a situation demands immediate action and the circumvention of usual procedures. State v. Nance , 149 N.C. App. 734, 743, 562 S.E.2d 557, 563-64 (2002). Examples of exigencies that may qualify as sufficient for a warrant exception include the probable destruction of evidence such as a controlled substance. State v. Nowell , 144 N.C. App. 636, 643, 550 S.E.2d 807, 812 (2001).
The State put forth evidence to argue, in effect, that probable cause and exigent circumstances existed for Officer White to conduct the search. Specifically, Officer White testified that "[t]he length of time that it took the Defendant to retrieve the marijuana inside of his pants [and] his still nervous demeanor made [him] believe that there was something else concealed inside the Defendant's pants." In explaining the step-by-step progression of the officers' search, and why it was justified, the State argued: "[P]olice officers can't just take people at their words and stop the investigation when they feel like someone's been completely cooperative. They have to do a thorough and full investigation, which is essentially what the strip search occurred in this case."
Without using the specific term "exigent circumstances," counsel for Defendant argued that once Defendant took the "bulge" out of his pants, which was all the officer felt, there was nothing else "reasonable" for the officer to search for. He posited:
What is reasonable for this officer to believe he's got something else? They think they are smoking weed. They find weed. What else would a reasonable officer think he might have in his crotch area? There's no weapon. We know that because of the Terry frisk. So what else would justify the strip search of Mr. Robinson?
He then stated, "there's nothing else." On recross examination of Officer White, counsel for Defendant questioned: "Exigent circumstances. No exigent circumstances here because you knew there wasn't a weapon; isn't that right?" Officer White answered, "There was no weapon present, correct."
Defense counsel further explained he had asked Officer White whether he would have written the ticket after Defendant handed over the marijuana. White answered he "thought there was more." Counsel again posited what might have made Officer White think that, reiterating there was nothing there to give a reasonable officer reason to go forward "with an invalid CMPD policy issue strip search."
The trial court responded, "each of these scenarios provides building blocks for probable cause to allow each of the searches to take place[,]" and "had the search not taken place at the Family Dollar, [contraband] would have been inevitably discovered by [Defendant's] arrest if he were searched at the Mecklenburg County Jail." Other than Officer White's testimony that no cavity search was conducted, however, neither the record nor the court's findings of fact address the scope of the strip search. The State did not argue that at the time the officers decided to conduct the strip search, Defendant would attempt to destroy evidence. Neither officer testified that exigent circumstances existed to require a strip search away from the police station. To the contrary, Officer White affirmed the absence of exigent circumstances, in stating he found no weapon during the frisk.
The trial court found the officers took Defendant to a "more secure location" to be strip searched in a manner that comported with CMPD directives. The trial court's findings of fact fail to address, however, whether exigent circumstances were required so that evidence would not be destroyed. Moreover, while the court's conclusions of law identified "that the subsequent strip search of the Defendant was based on probable cause," the court failed to address exigent circumstances. The trial court concluded, based on a totality of the circumstances, "the subsequent search in the Family Dollar does not violate Defendant's Fourth Amendment right of illegal search and seizure[.]"
Here, taken in context, Defendant argued the lack of exigent circumstances for the warrantless search. See N.C. R. App. P. 10(a)(1). The State failed to meet its burden to show exigent circumstances existed in order to protect a significant governmental interest. See Allison , 298 N.C. at 141, 257 S.E.2d at 421. Further, the trial court failed to make requisite findings of fact or conclusions of law as to exigent circumstances. See Pulliam , 139 N.C. App. at 439-40, 533 S.E.2d at 282. Accordingly, the trial court erred in finding the warrantless strip search did not violate Defendant's Fourth Amendment right of illegal search and seizure and thus denying Defendant's motion to suppress.
3. Doctrine of Inevitable Discovery
We briefly address the State's argument that the doctrine of inevitable discovery applies to this case. In support of its argument, the State contends the trial court "noted" at that hearing that even if the search had not been conducted at the Family Dollar, contraband would have been inevitably discovered at Defendant's arrest if he were searched at the Mecklenburg County jail. The trial court made no findings of fact or conclusions of law, however, that the doctrine of inevitable discovery applied to this case.
Despite Officer White's testimony that he had not placed Defendant under arrest at the time officers decided to conduct the strip search, the record shows Defendant was in the patrol car, handcuffed, and in the presence of officers. Officer White explained to Defendant that his cooperation would determine whether "he went to jail or if he was to receive a citation based on what was inside of his pants." Such circumstances do not support the application of the doctrine of inevitable discovery; the argument lacks merit.
V. Conclusion
Because the trial court did not make findings of fact or conclusions of law supporting the existence of exigent circumstances to justify the search, we reverse the trial court's order denying Defendant's motion to suppress and vacate all convictions that rested exclusively upon evidence obtained through the warrantless strip search.
REVERSE AND VACATE IN PART.
Report per Rule 30(e).
Chief Judge McGee and Judge Hampson concur.

The trial court heard the motion on 19 September 2017. Judge Pomeroy dated the order 18 September 2017. The date the order was filed is illegible on the stamp.

The unit known then as the Focus Mission Team is now called the Crime Reduction Unit.

The trial court made a finding of fact regarding Officer White detecting burnt marijuana. In response to question as to whether he was "able to detect any change in the odor of the marijuana that was about the Defendant," once he exited the vehicle, Officer White testified that he detected a faint odor of "unburnt" marijuana coming from Defendant's ankle area.

At this point in the hearing, the State argued Defendant had been detained, but had not actually been searched. Counsel for Defendant objected, argued Defendant was "clearly under arrest," based on being handcuffed and not being free to leave. He also stated no Miranda warnings had been given. The court ruled: "Just because he's in handcuffs doesn't mean he's under arrest."

The court viewed Officer White's body camera footage at this time during the hearing.

We do not restate here the entirety of trial court's findings of fact; rather, we restate only those most pertinent to our review.

At the suppression hearing, Defendant did not challenge the legitimacy of the traffic stop, nor does he do so here. He concedes on appeal "that the officers lawfully stopped the car that he rode in due to the expired tag." Neither does Defendant challenge here the trial court's conclusion that the officers had reasonable suspicion Defendant may have possessed a weapon so as to justify the Terry frisk. He further concedes competent evidence in the record indicates the officers developed an individualized suspicion that Defendant had marijuana on his person, and thus concedes the inapplicability of this Court's ruling in State v. Pigford , 248 N.C. App. 797, 789 S.E.2d 857 (2016).